**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


CHERYL A. AUSTIN,                    )
                                     )
            Plaintiff,               )
                                     )
    v.                               )        1:09CV900
                                     )
ALLTEL COMMUNICATIONS, LLC;          )
VERIZON WIRELESS SERVICES, LLC;      )
VERIZON COMMUNICATIONS INC.;         )
and CELLCO PARTNERSHIP, d/b/a        )
VERIZON WIRELESS,                    )
                                     )
            Defendants.              )


## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants Alltel Communications, LLC and Cellco Partnership d/b/a Verizon Wireless's Motion for Summary Judgment (Docket Entry 28) and Defendants Verizon Wireless Services, LLC and Verizon Communications Inc.'s Motion for Summary Judgment (Docket Entry 30) and for disposition of Plaintiff's Motion to Withdraw or Amend Admissions (Docket Entry 36). (See Docket Entry dated Mar. 25, 2011; see also Docket Entry dated Jan. 23, 2010 (assigning case to undersigned United States Magistrate Judge).) For the reasons that follow, the undersigned will grant Plaintiff's Motion to Withdraw or Amend Admissions and the Court should grant Defendants' Motions for Summary Judgment.

# I. PROCEDURAL BACKGROUND

Plaintiff's claims arise from her termination from Alltel in January 2009. (See Docket Entry 1-2, ¶ 18.)[1] Plaintiff, originally proceeding pro se, filed a Complaint in the General Court of Justice, Superior Court Division, Forsyth County, North Carolina, alleging claims against Defendants for violations of the Age Discrimination in Employment Act of 1967 ("ADEA") (id., ¶¶ 46-48) and wrongful termination in violation of North Carolina public policy (id., ¶¶ 49-53). Defendants timely filed a Petition of Removal to this Court on the basis of federal question jurisdiction. (See Docket Entry 1, ¶ 5.)

Alltel and the Verizon Defendants have now separately filed Motions for Summary Judgment. (Docket Entries 28, 30.) Subsequent to those filings, Plaintiff filed a Motion to Withdraw or Amend Admissions. (Docket Entry 36.) All Motions have been fully briefed or the time for doing so has now passed.

---

[1] Plaintiff was originally hired by Alltel Communications, LLC. (Docket Entry 1-2, ¶ 18; Docket Entry 10, ¶ 18.) Subsequently, "[o]n January 9, 2009, Alltel Communications, LLC was acquired by and became a wholly owned subsidiary of Cellco Partnership d/b/a Verizon Wireless." (Docket Entry 10, ¶ 2; see also Docket Entry 1-2, ¶ 8.) The remaining Defendants in this action, Verizon Wireless Services, LLC and Verizon Communications Inc., deny ever employing Plaintiff and contend that they are therefore improper Parties to this action. (See Docket Entry 10, ¶¶ 5-6, Docket Entry 30.) For ease of reading and the sake of clarity, the undersigned will refer to Alltel Communications, LLC and Cellco Partnership d/b/a Verizon Wireless collectively as "Alltel" and will refer to Verizon Wireless Services, LLC and Verizon Communications Inc. collectively as "the Verizon Defendants."

## II. DISCUSSION

### A. Plaintiff's Motion to Withdraw or Amend Admissions

This Court held an initial pretrial conference in this matter on January 25, 2010. (See Docket Entry dated Jan. 25, 2010.) At the initial pretrial conference, the Court placed this case on the standard discovery track, with a modified end-date of June 25, 2010. (See Docket Entry dated Jan. 26, 2010.) On March 5, 2010, Defendants served their First Request for Admissions on Plaintiff ("Requests"). (See Docket Entry 37 at 2.) Plaintiff had 30 days to respond to those Requests. See Fed. R. Civ. P. 36(a)(3).[2] On March 31, 2010, counsel for Plaintiff made an appearance in this action. (See Docket Entry 14.)[3] Plaintiff contends, however, that her counsel did not become aware of the previously served Requests until after her time to respond under Rule 36(a)(3) had lapsed. (See Docket Entry 37 at 2.)

---

[2] Said rule states:

> A matter is admitted unless within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).

[3] Plaintiff's filings do not indicate when she retained counsel, only that said counsel made his first appearance on March 31, 2010. (See Docket Entries 36, 37, 44.)

-3-

On May 11, 2010, Plaintiff, through counsel, belatedly responded to Defendants' Requests. (Id.) With respect to certain Requests, Plaintiff stated: "Deemed admitted solely because Plaintiff failed to respond within 30 days of service of the [R]equest, and Plaintiff has not had an opportunity to conduct discovery." (See Docket Entry 36-1 at 3-4.) Plaintiff now "seeks to amend her responses to [certain] [R]equests by withdrawing her former admissions and denying the statements in full . . . ." (Docket Entry 37 at 3.) Specifically, Plaintiff seeks to deny the following five items which the Federal Rules of Civil Procedure otherwise would deem conclusively admitted by default:

> 5. Admit that Plaintiff's employment with Defendants Alltel Communications, LLC and Cellco Partnership d/b/a Verizon Wireless properly ended after she received multiple disciplinary warnings.
>
> 6. Admit that Plaintiff has no direct evidence to support her age discrimination claim.
>
> 7. Admit that Plaintiff has no indirect evidence to support her age discrimination claim.
>
> 8. Admit that Plaintiff has no direct evidence to support her claim of wrongful termination.
>
> 9. Admit that Plaintiff has no indirect evidence to support her claim of wrongful termination.

(Id. at 2; see also Docket Entry 36-1 at 3-4.)

Under Rule 36 of the Federal Rules of Civil Procedure:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. . . . [T]he court may permit withdrawal or amendment if [1] it would promote the presentation of the merits of the action and

-4-

> if [2] the court is not persuaded that it would prejudice
> the requesting party in maintaining or defending the
> action on the merits.

Fed. R. Civ. P. 36(b). "The Court has considerable discretion over the withdrawal of admissions once they have been made." <u>Kress v. Food Emp'rs Labor Relations Ass'n</u>, 285 F. Supp. 2d 678, 681 (D. Md. 2003) (internal quotation marks and citation omitted). Here, because both prongs of Rule 36(b) weigh in favor of allowing the proposed amendments, the undersigned will exercise that "considerable discretion" to grant Plaintiff's instant Motion.

"The first prong - promoting presentation of the case on the merits - contemplates 'facilitat[ing] the development of the case in reaching the truth.'" <u>J&J Sports Prods., Inc. v. Mumford</u>, No. DKC 10-2967, 2012 WL 1409588, at *3 (D. Md. Apr. 20, 2012) (unpublished) (quoting <u>McClanahan v. Aetna Life Ins. Co.</u>, 144 F.R.D. 316, 320 (W.D. Va. 1992)) (alteration provided by <u>J&J Sports</u>). "It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed." <u>United States v. Turk</u>, 139 F.R.D. 615, 618 (D. Md. 1991) (internal quotation marks and citation omitted). In that same vein, disposition of this case based solely on default admissions that Plaintiff lacks evidence would not serve the interests of justice, especially given that, subsequent to the initial discovery default, the Parties conducted discovery and presented evidence to the Court

-5-

in connection with the pending summary judgment motions. (See Docket Entries 28, 29, 31, 38, 39, 40, 41.)

"The second prong - prejudice to the requesting party - contemplates 'the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered.'" J&J Sports Prods., 2012 WL 1409588, at *4 (quoting McClanahan, 144 F.R.D. at 320); see also Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997) ("[Prejudice] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Prejudice under Rule 36(b), rather, relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." (internal quotation marks and citations omitted)). Although Defendants note that discovery has closed and that their summary judgment motions, filed prior to Plaintiff's instant Motion, rely in part on Plaintiff's admissions, Defendants have not identified any "sudden need to obtain evidence to prove the matter it had previously relied upon as answered," McClanahan, 144 F.R.D. at 320. (See Docket Entry 43 at 7-8.) In fact, as noted, it appears that the Parties engaged in full discovery. Furthermore, Defendants have presented fully developed arguments addressing the merits of the instant action. (See id.; Docket Entry 41.) Under these

-6-

circumstances, the undersigned will allow Plaintiff to amend her admissions as proposed and will consider Plaintiff to have denied the foregoing listed Requests for the purposes of addressing Defendants' instant summary judgment motion(s).

### B. Defendants' Motions for Summary Judgment

As noted, Plaintiff brings claims for wrongful termination under the ADEA and North Carolina law. (See Docket Entry 1-2.) "The ADEA provides, in relevant part, that '[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.'" Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 182 (2009) (quoting 29 U.S.C. § 623(a)(1)). With respect to Plaintiff's state law wrongful termination claim, "[w]hile no North Carolina Court has expressly identified the essential elements (at least in list form) for such a cause of action, the elements of a claim alleging wrongful discharge in violation of public policy, generally, are described as: (1) the plaintiff was an at-will employee of the defendant; (2) the defendant terminated the plaintiff; (3) there was a public policy applicable to the circumstances of the termination; (4) the plaintiff was protected by the public policy; and (5) the defendant's motivation in terminating plaintiff violated this

public policy." Crespo v. Delta Apparel, Inc., No. 5:07CV65-V, 2008 WL 2986279, at *5 (W.D.N.C. July 31, 2008) (unpublished).

As to these claims, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586–87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006)

("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

## 1. The Verizon Defendants

The Verizon Defendants contend that "at no time was Plaintiff employed by either [Verizon Wireless Services, LLC or Verizon Communications Inc.]" and, accordingly, they have no liability on Plaintiff's ADEA or state-law wrongful termination claims. (Docket Entry 31 at 3.) Plaintiff has not responded to the Verizon Defendants' instant Motion. (See Docket Entries dated Dec. 30, 2010, to present.) Moreover, during the course of discovery, Plaintiff admitted that she was never employed by either of the Verizon Defendants. Specifically, Defendants' First Requests for Admission served on Plaintiff included the following: "Admit that at no time has Plaintiff been employed by Verizon Wireless Services, LLC" and "Admit that at no time has Plaintiff been employed by Verizon Wireless Communications, LLC." (Docket Entry 36-1 at 3.) With respect to both, Plaintiff responded, "Admitted." (Id.) Plaintiff has not sought to withdraw or amend those admissions. (See Docket Entry 36.) These circumstances establish the absence of a genuine issue of material fact and the Court thus should grant the Verizon Defendants' instant Motion.

## 2. Alltel

Alltel contends that Plaintiff's slow transaction times, combined with general performance issues, prompted her firing. (See Docket Entry 29 at 1-11.) Plaintiff asserts that she performed adequately and that attention to her transaction time constitutes a pretext developed by her supervisor, Valerie Santiful, in order to fire Plaintiff due to her age. (See Docket Entry 38 at 1-5.) In fact, the uncontested evidence before the Court reveals that, before the termination of Plaintiff's employment (and even before Santiful became Plaintiff's supervisor), Plaintiff received several notices from her supervisors detailing performance concerns.

Alltel hired Plaintiff in February 2005. (See Docket Entry 29-2 at 3.) As early as July 2005, Plaintiff received notice of her placement on a "Performance Improvement Plan" because her "sales results have not been at an acceptable level." (Docket Entry 29-3 at 10.) In August 2005, Plaintiff received a memo from her then-supervisor, Stewart Montgomery, entitled "Written Warning - Attendance," which indicated that, "[o]n August 4, 2005, [Plaintiff] was given a verbal warning for being tardy 9 times between July 11, and August 4, 2005" and that, despite that verbal warning, Plaintiff was again tardy on August 18, 2005. (Id. at 11.) On September 28, 2005, Plaintiff received a "Final Written

Warning - Attendance" indicating that she was again tardy that morning.  (See id. at 12.)

Moreover, Plaintiff's former supervisors took notice of the lack of speed with which Plaintiff performed transactions.  In Plaintiff's review dated March 2006, completed by then-supervisor Montgomery, Montgomery rated Plaintiff "below expectations" with respect to her ability "to quickly navigate billing and point of sale system to answer customer's questions or input changes to customer's account or complete new activation of products and services."  (Docket Entry 28-3 at 9.)  In the "Summary Comments" section, Montgomery wrote: "If [Plaintiff] could work on the speed at which she services each customer this will help her to see more sells [sic] opportunities in one day."  (Id. at 10.)  In a subsequent review, dated March 1, 2007, then-supervisor Shawn Hammett noted a need for Plaintiff to "[i]mprove on the time [Plaintiff] takes with customers."  (Id. at 12.)

Concerns about Plaintiff's job performance continued after Santiful became Plaintiff's supervisor in April 2008.  In May 2008, Santiful sent Plaintiff a "Final Written Warning," in this case for "Cash Handling Procedures" (id. at 13), indicating that Plaintiff left funds "out all night in the register, unsecured" in violation of company policy (id.).  Yet again, in June 2008, Plaintiff received a "Final Written Warning" for violation of certain integrity guidelines based on information that Plaintiff gave a

-11-

customer a data cable without charge in order to secure a sale. (Id. at 14.)[4]  Subsequently, in June 2008, Santiful documented a "Verbal Warning for working unauthorized overtime" detailing three dates in that month on which Plaintiff had worked overtime without management approval and indicating that her actions in that regard affected team morale.  (Docket Entry 28-1 at 19.)

Santiful raised concerns regarding Plaintiff's performance within the company hierarchy as well.  In a note (with a hand-written notation in the upper margin indicating submission to Human Resources on May 5, 2008), Santiful addressed Plaintiff's attendance, integrity, and transaction times.  (Id. at 16-17.) With respect to attendance, the note provides that, despite having previous conversations with Plaintiff regarding punctuality, Plaintiff, on three specific instances in April 2008, failed to timely arrive for her shift and/or to return from lunch.  (Id. at 16.)  With respect to integrity, the note addressed concerns regarding Plaintiff adding data features to customer accounts inappropriately.  (Id. at 16-17.)  And with respect to transaction time, the note indicated that co-workers had expressed frustration that Plaintiff's inability to timely process transactions placed

---

[4]  Handwritten notes on this document, apparently made by Plaintiff at the time she originally reviewed it, indicate that she did not recall the incident.  (See Docket Entry  28-3 at 15.)  In another exhibit filed in connection with Alltel's instant Motion for Summary Judgment, consisting of a letter sent by Plaintiff after her termination, Plaintiff denies giving away the data cable as alleged.  (See Docket Entry 29-3 at 13.)

additional pressure on them.  (Id. at 17.)  Santiful also noted that three customers in three weeks had lodged complaints with her regarding Plaintiff's slowness.  (Id.)

Issues between Plaintiff and Santiful appear to have culminated in December 2008.  On December 5, 2008, Santiful sent Plaintiff a "Written warning – performance concerns" addressing Plaintiff's slow transaction speed.  (See id. at 11-12.)  That memo cites at least one specific example in which Plaintiff completed a transaction in two hours that Santiful felt should have taken approximately 45 minutes.  (Id. at 11.)  It also highlights 11 days on which the number of transactions that Plaintiff completed was significantly lower than that of other employees.  (Id.)  Finally, it states: "An additional concern would be the amount of time it takes when closing out a cash register at the end of your shift, and the amount of errors that must be corrected in regards to adjustments on checks, cash, and credit cards, rate plan changes, etc."  (Id.)  The memo concludes:

> The concerns with transaction times have been discussed with you periodically for approximately six months, however we are not seeing consistent and sustained improvements.  The lack of attention to details, which could be the reason for the slow cash closing procedures and a high number of errors, is another concern that needs to be improved upon and sustained immediately.
>
> If these performance concerns do not improve immediately and that improvement sustained, or if there are additional performance concerns, additional corrective action, up to and including termination will follow.

(Id. at 12.)

-13-

Later, in an email dated December 10, 2008, to Human
Resources, Santiful raised concerns that Plaintiff "doesn't seem to
be making an effort to change or do anything differently," that her
"transaction time is not improving," that "her closing out at the
end of her shift is not getting done in a timely manner," and that
"she is not following the action plan that was given to her." (Id.
at 22.) On December 17, 2008, Santiful sent Plaintiff a "Final
Written Warning for performance and behavioral concerns." (Id. at
13-15.) Said Warning provides that, despite having several
conversations regarding the matter, Plaintiff "failed to follow
[Santiful's] directive" regarding recording transaction times (id.
at 14), that Plaintiff continued to make errors in processing
transactions and handling the cash register (id. at 15), and that,
in instances where Plaintiff did make mistakes, Plaintiff took an
inordinate amount of time attempting to correct those errors rather
than moving on as directed (id.).

Finally, in another email sent to Human Resources in January
2009, Santiful detailed multiple transactions that Plaintiff
required an extended period of time to complete. (Id. at 23.)
Santiful explained: "The employees are still coming to me stated
[sic] that they feel a lot of pressure when [Plaintiff] is working
because she is not moving as fast. So what I did was look at how
long it was taking her to process transactions as well as looked at
her transaction times compared to her peers." (Id.)

-14-

Despite this well-documented history of performance concerns, Plaintiff contends that the issues cited by Santiful merely represent a pretext to terminate Plaintiff due to her age.  (See Docket Entry 38 at 9-11.)  Plaintiff's evidence comes primarily in the form of her 2007 year-end performance review and her own affidavit.  In her 2007 year-end review (created January 1, 2008, and, per Plaintiff's affidavit, "discussed in March 2008" (Docket Entry 39-1, ¶ 3)), Plaintiff's then-supervisor, Hammett, gave Plaintiff an overall rating of "Outstanding." (Docket Entry 39-2.)  In her affidavit, Plaintiff asserted that her "sales and performance for Defendants was [sic] very good, and [she] regularly met or exceeded [her] monthly quotas.  Compared to the other employees, [she] was always in the top half in sales and sales related criteria.  During the last months of employment, [she] continued to meet [her] sales quotas and sales goals at the same level as [she] had for several years." (Docket Entry 39-1, ¶ 7.)

Plaintiff also has noted that she was 44 years old when Santiful (11 years younger than Plaintiff (see Docket Entry 29-3 at 14)) became Plaintiff's supervisor.  (Docket Entry 39-1, ¶ 4.)  According to Plaintiff's affidavit, during the period of Plaintiff's employment under Santiful, Santiful made hires of the following ages: 19, 23, 24, 27, 33, and 37.  (See id. ¶ 6.)  In her affidavit, Plaintiff further averred that several of those employees made derogatory comments, such as that Plaintiff was "too

-15-

old" or "too slow," but that Santiful "never did anything to stop these comments about [Plaintiff's] age." (Id., ¶ 5.) Moreover, Plaintiff has averred that Santiful made certain "age-based comments" herself such as "beg[inning] many conversations with [Plaintiff] by stating that 'I am getting too old for this,' or that 'We are getting too old for this business.'" (Id.)[5] According to Plaintiff: "Through her comments to me, [] Santiful indicated that she believed only young people could work in the wireless sales industry." (Id.)

Plaintiff has also offered, through the affidavit submitted in connection with her Response, that the focus on transaction times/counts was "a completely new and arbitrary 'measure' of performance" (id., ¶ 9), which failed to take into account many factors, such as differences in shift lengths, the nature of the transactions, and other work besides transactions that certain employees, including Plaintiff, completed (id., ¶ 10). In Plaintiff's view, Santiful's written warning in December 2008

_____

[5] The assertion that Santiful stated "We are getting too old for this business" appears only in Plaintiff's affidavit. (Docket Entry 39-1, ¶ 5 (emphasis added).) In Plaintiff's deposition, Plaintiff only recounted Santiful stating generally: "[Plaintiff], I'm getting too old for this kind of work." (Docket Entry 29-2 at 17 (emphasis added).) Plaintiff's letter sent to Human Resources shortly after her termination likewise cited Santiful as stating: "[Plaintiff], I'm getting way to too old for this business." (Docket Entry 29-3 at 13 (emphasis added).) A party may not create a genuine issue of material fact by submitting evidence (such as an affidavit) that contradicts its own previously adduced evidence (such as deposition testimony). See, e.g., Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999).

selects an 11-day period out of a wider pool of 38 days in a manner that manipulates the available data in order to exaggerate the difference in transaction times between Plaintiff and her co-workers. (Id., ¶ 11.) Plaintiff's affidavit also asserts that older customers, who generally would take more time to complete a transaction and more often would engage in lengthy discussions, would seek her out, as opposed to other salespeople, due to her age, further skewing her transaction times. (Id., ¶ 14.)

Finally, Plaintiff has averred that, since she began work with Alltel, "they rarely terminated anyone for performance or conduct issues." (Id., ¶ 8.) In this regard, Plaintiff highlights one particular employee, age 24, who despite "repeated insubordination," remained employed with Alltel. (Id.) To support this assertion, Plaintiff has filed copies of the Written Warnings sent by Santiful to that employee which elaborate on that employee's misconduct. (See Docket Entry 40-1.)

Against this backdrop, the undersigned examines Plaintiff's ADEA and state-law wrongful termination claims.

### a. ADEA

"[U]nder the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross, 557 U.S. at 176. "Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . age discrimination through two avenues of proof."

-17-

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). "First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . age discrimination motivated the employer's adverse employment decision." Id.[6] "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. (citing

---

[6] Even prior to the United States Supreme Court's decision in Gross, the United States Court of Appeals for the Fourth Circuit had recognized that, in the context of the ADEA, "motivated" meant "but-for" causation, i.e., that age "'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (internal citation omitted) (emphasis added) (quoting Reeves, 530 U.S. at 141, which in turn had quoted Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). Indeed, the Fourth Circuit had adopted this understanding of the ADEA's causation standard much earlier. See Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) ("[T]he narrow motivational [issue] central to any ADEA claim . . . [is] whether [the plaintiff] was discharged because of his age or more precisely, whether age was a determining factor in the sense that but for his employer's motive to discriminate against him because of his age, he would not have suffered the unfavorable action." (emphasis added) (internal citations, parentheses, and quotation marks omitted)). In this respect, the Fourth Circuit differed from some other circuits that, in pre-Gross ADEA cases, had permitted age to qualify as a "motivating" factor even if it did not play a determinative role in the adverse action. See, e.g., Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (holding that Gross changed meaning of "motivating" from that previously understood in Second Circuit). Accordingly, the use of the word "motivating" to describe the ADEA's causation standard in Fourth Circuit cases preceding Gross does not mean that such decisions lack continuing validity.

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).[7]

### i. Direct Evidence

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th

---

[7] The United States Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas utilized in Title VII cases is appropriate in the ADEA context." Gross, 557 U.S. at 175 n.2 (internal citation omitted). The United States Court of Appeals for the Fourth Circuit, however, has endorsed the continued utilization of the McDonnell Douglas indirect proof scheme in ADEA cases in at least two unpublished decisions after Gross. See Duffy v. Belk, Inc., 477 F. App'x 91, 93 (4th Cir. 2012); Bodkin v. Town of Strasburg, Va., 386 F. App'x 411 (4th Cir. 2010). Judges of this Court and of other district courts in the Fourth Circuit also have taken that approach, see, e.g., Hill v. Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 385 (M.D.N.C. 2012) (Beaty, C.J.); Pressley v. Caromont Health, Inc., No. 3:09-cv-460-FDW-DSC, 2010 WL 4625965, at *2 (W.D.N.C. Nov. 3, 2010) (Whitney, J.) (unpublished), aff'd, 414 F. App'x 566 (4th Cir.), cert. denied, ___ U.S. ___, 132 S. Ct. 419 (2011); Wall v. Alderman Co., No. 1:08CV785, 2009 WL 5171819, at *5-6 (M.D.N.C. Dec. 21, 2009) (Dixon, M.J.) (unpublished), aff'd and adopted, No. 1:08CV785 (M.D.N.C. Mar. 26, 2010) (Tilley, S.J.) (unpublished), as have all federal appellate courts that have reached the issue, see Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1278-79 (10th Cir. 2010) ("[W]e conclude that [Gross] does not preclude our continued application of McDonnell Douglas to ADEA claims . . . [and, in so holding,] join all of our sibling circuits that have addressed this issue." (citing published decisions from First, Second, Third, Fifth, and Sixth Circuits affirmatively embracing McDonnell Douglas analysis in ADEA cases after Gross)); accord Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013); Fleishman v. Continental Cas. Co., 698 F.3d 598, 604 (7th Cir. 2012); Shelley v. Green, 666 F.3d 599, 607-08 (9th Cir. 2012).

Cir. 1999) (en banc), abrogated in part on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which [the] plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination."), abrogated in part on other grounds, Desert Palace, 539 U.S. at 90.  Plaintiff cites two items as direct evidence in support of her ADEA claim: (1) an internal Human Resources email; and (2) Plaintiff's un-acted-on complaints about comments by co-workers.  (See Docket Entry 38 at 6-7.) Neither of those items constitute direct evidence sufficient to defeat Alltel's instant Motion.

The email that Plaintiff cites consists of correspondence between two members of Alltel's Human Resources department.  In said email, one member states: "I'm concerned about [Plaintiff's] apparent perception that she was discriminated against based on age.  Once my investigation is complete, I believe that we'll have some coaching points for [Santiful] concerning statements that can be perceived as discriminatory, etc."  (Docket Entry 39-6 at 1.) That email appears to have been prompted by two items: (1) Plaintiff's letter sent to Human Resources after her termination; and (2) an email sent by Al Robinson, Santiful's supervisor, also to Human Resources.

-20-

In Plaintiff's letter, sent February 6, 2009, Plaintiff recounts the events she views as leading up to her termination. (See Docket Entry 29-3 at 13-15.)  Within that letter, Plaintiff states: "Santiful continued to always begin our conversations with '[Plaintiff], I'm getting way too old for this business, or I must be getting old' (she was 11 years my junior)." (Docket Entry 29-3 at 14.)  The letter overall, however, appears to recount Plaintiff's belief that she was fired in retaliation for reporting a security policy violation by Santiful.  (See id. at 13-15.)  It does not allege age discrimination in any respect.  (Id.)

The email dated February 12, 2009, from Robinson to Human Resources attaches Robinson's handwritten notes regarding a previous meeting with Plaintiff and states: "Here's all 17 pages of my handwritten notes.  Call me if you want to discuss, but I really only see one piece that concerns me. . .  In one of my discussions with her, [Plaintiff] mentions her 'age' as a reason she feels like her peers are frustrated."  (Docket Entry 39-6 at 2.) Specifically, Robinson's notes state in relevant part:

> [Robinson]:      What are some of the tensions in the store [&] what's driving that?
>
> [Plaintiff]:      - difference in age [&] not sharing common interests

(Id. at 3.)[8]

---

[8] Robinson's handwritten notes appear to represent paraphrased notations of conversations held with Plaintiff, rather than a verbatim account.

Nothing in these notes, however, recounts any actual statement or action taken by Santiful which could be construed as discriminatory. (See id. at 1-4.) The entirety of this evidence consists of vague assertions regarding age, and, at worst, a possible concern by the Human Resources department that Plaintiff may have perceived age discrimination. The evidence Plaintiff cites here as direct evidence of discrimination falls short as it does not demonstrate a "discriminatory attitude" much less any animus that may have borne "directly on the contested employment decision," Taylor, 193 F.3d at 232.

Plaintiff's assertions regarding Santiful's failure to address comments by Plaintiff's co-workers is similarly deficient. Plaintiff's affidavit states: "[Santiful] was present when other employees . . . would say [Plaintiff] was 'too old' and 'too slow,' and make other derogatory comments suggesting [Plaintiff] was slow because [Plaintiff] was older than them." (Docket Entry 39-1, ¶ 5.) Simply put, these circumstances do not establish a connection between any age-related bias and Plaintiff's termination. See Lerner v. Shinseki, No. ELH-10-1109, 2011 WL 2414967, at *17 (D. Md. June 10, 2011) (unpublished) ("[T]he silence of [the plaintiff's] supervisors and instructors in the face of his fellow interns' alleged inappropriate comments regarding his age cannot, without more, support [the plaintiff's] ADEA claim. As the Fourth Circuit recently remarked in Merritt [v.

*Old Dominion Freight Line*], 601 F.3d [289, 300 (4th Cir. 2010)]: 'It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby.' Rather, the plaintiff must put forth evidence that shows a 'nexus' between a discriminatory attitude at the workplace and the employment action." (some internal quotation marks and citations omitted)). Plaintiff, in fact, acknowledges this deficiency. (See Docket Entry 38 at 7 ("Although in this case, the comments were not in direct relation to the termination decision, they display and [sic] age-based animus of the decision-maker Santiful.").)

Any assertion by Plaintiff that Santiful's own remark, "I am too old for this," (or even Santiful's remark alleged in Plaintiff's affidavit: "We are getting too old for this business") fails as direct evidence for the same reason. See Ritchie v. Industrial Steel, Inc., 426 F. App'x 867, 871-72 (11th Cir. 2011) ("[A decision maker] frequently referred to [the plaintiff] as an 'old man,' and [another decisionmaker] also referenced [the plaintiff's] age on one or two occasions. Nevertheless, [the plaintiff] did not demonstrate that those remarks were related to the decision to terminate his employment."); Nelson v. United Parcel Serv., Inc., 337 F. App'x 561, 563 (7th. Cir. 2009) ("[Decision maker's] comments that [the plaintiff] was too old and too slow, as well as repeated references to him as 'Old Silver,'

are nothing more than 'stray remarks' disconnected from the decision to terminate [the plaintiff] and do not constitute an admission that he was fired because of his age."). Accordingly, Plaintiff has offered no direct evidence of age-based discrimination.

### ii. Prima Facie Case

Under the alternative McDonnell Douglas framework, Plaintiff must first establish a prima face case of age discrimination. Hill, 354 F.3d at 285 (citing Texas Dep't of Cmty. Affairs, 450 U.S. at 252–53, and McDonnell Douglas, 411 U.S. at 807). "To demonstrate the prima facie case . . ., [P]laintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants [substantially younger than her]." Id.; see also Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 n.1 (4th Cir. 1996) (recognizing that decision in O'Conner v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), "modif[ied] the [McDonnell Douglas] framework [as used in ADEA cases] . . . by ruling that the worker who replaces an ADEA plaintiff need not be outside the protected class"); Hill v. Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 385 (M.D.N.C. 2012) (Beaty, C.J.) (applying "substantially younger" as characteristic of fourth

-24-

element of a prima facie ADEA claim).  Plaintiff also may satisfy
the fourth element by showing that she was "treated differently
than similarly situated individuals outside the class." Harris v.
Powhatan Cnty. Sch. Bd., 885 F. Supp. 2d 804, 810 (E.D. Va. 2012)
(citing Burgess v. Bowen, 466 F. App'x 272, 278-79 (4th Cir. 2012)
(unpublished)); see also Christmas v. Arc of the Piedmont, Inc.,
No. 3:12CV00008, 2012 WL 2905584, at *5 (W.D. Va. July 16, 2012)
(unpublished) (quoting same elements for ADEA prima facie case).

With respect to the prima facie case, the only matters at
issue concern elements three and four.[9]  As to the third element -
i.e., whether Plaintiff has shown that she "was performing her job
duties at a level that met her employer's legitimate expectations
at the time of the adverse employment action," Hill, 354 F.3d at
285 - Plaintiff contends:

> Plaintiff has presented sufficient evidence that she was
> performing satisfactorily.  Her most recent job
> performance review rated her "outstanding," and gave her
> "Successful" and "Exceptional" in very [sic] rating
> category.  She continued to meet her sales goals and
> sales quotas, and she usually outperformed her peers in
> all metrics usually tracked by Defendants to measure
> performance.  The evidence is strong that Plaintiff was
> performing satisfactorily by every measure regularly used
> to gauge performance of sales associates.

(Docket Entry 38 at 8-9.)

However, the "most recent job performance review" that
Plaintiff references dates to January 2008 and concerns Plaintiff's

---

[9] The record establishes that Plaintiff fell within the
protected class and suffered an adverse employment action.

performance for year-end 2007 - more than a year prior to her firing in January 2009. (See Docket Entry 39-2.) Accordingly, said evaluation does not reflect Alltel's perception of Plaintiff's performance "at the time of the adverse employment action," Hill, 354 F.3d at 285. See O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 547 (4th Cir. 1995) (finding positive review in January irrelevant to whether employee was performing adequately when terminated in August), rev'd on other grounds, 517 U.S. 308 (1996); Rouse v. Federal Exp., No. 4:10-cv-2275-RBH-TER, 2012 WL 3157009, at *5 (D.S.C. June 22, 2012) (unpublished) (noting "the relevant time to evaluate [] an employee's performance is at the time of the adverse action").

Plaintiff's other argument - that her meeting of relevant sales goals and sales quotas evidences satisfactory performance - also falls short. On this point, Plaintiff relies only on her affidavit. (See Docket Entry 39-1, ¶ 7.) However, "[the plaintiff's] own testimony, of course, cannot establish a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Rather, "[i]n determining whether an employee was performing at a level that met the [employer's] legitimate expectations, 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" Southeastern

Freight Lines, Inc., 877 F. Supp. 2d at 385 (quoting King, 328 F.3d at 149)).

Moreover, Plaintiff's affidavit does not address the numerous pieces of evidence cited by Alltel demonstrating Santiful's perception that Plaintiff's job performance was lacking in several respects, such as lengthy transaction times, error-prone transactions, punctuality, and ultimately the inability to comply with her supervisor's directives, all of which preceded Plaintiff's firing. Furthermore, despite Plaintiff's assertion that transaction counts were an "arbitrary" and inaccurate measure of performance (see Docket Entry 39-1, ¶¶ 9-12), "'it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [P]laintiff's termination,'" Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)). Accordingly, as the sole piece of evidence before the Court in support of Plaintiff's assertion that she was performing adequately consists of a year-old performance review and uncontested evidence illustrates Santiful's perception that Plaintiff in fact was not performing adequately at the time of her firing, Plaintiff cannot meet the third prong of a prima facie case for age discrimination, even recognizing that "the burden to establish a prima facie case is not particularly onerous," Alderman

v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 542 (M.D.N.C. 2002) (Beaty, J.).

Plaintiff also fails to establish the fourth element of a prima facie case for age discrimination - i.e., that her "position remained open or was filled by similarly qualified applicants [substantially younger than her]," Hill, 354 F.3d at 285, or that she was "treated differently than similarly situated individuals outside the [protected] class," Harris, 2012 WL 3249640, at *4. With respect to her replacement, Plaintiff offers only:

> Defendants have not indicated whether or not Plaintiff was replaced by a younger worker. Because every other employee hired by Defendant employee Santiful was much younger . . . it is reasonable to infer that if anyone was hired to replace Plaintiff, he or she was younger than Plaintiff. Of course, at the summary judgment stage, all reasonable inferences must be drawn in favor of the non-moving party.

(Docket Entry 38 at 8.) "Plaintiff bears the burden of establishing every prong of a prima facie case of age discrimination. Mere speculation will not suffice to establish the fourth prong of a prima facie case." Southeastern Freight Lines, 877 F. Supp. 2d at 387. Here, Plaintiff fails to offer any evidence on the matter. (See Docket Entries 38, 39, 40.)

Although the Court must draw all reasonable inferences in favor of Plaintiff at this stage in the proceedings, see Matsushita Elec. Indus., 475 U.S. at 587, the evidence does not support an inference that Alltel replaced Plaintiff with a younger worker based solely on past hires of younger workers, given that Plaintiff

-28-

concedes one such prior hire was a mere seven years younger than Plaintiff and near the protected age of 40 (see Docket Entry 38 at 2). See Grosjean v. First Energy Corp., 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of age discrimination prima facie case."); Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997) (holding age difference of seven years presumptively insubstantial); Robinson v. Greenwood Cnty., No. 5:07CV65-V, 2011 WL 6257125, at *4 (D.S.C. Nov. 22, 2011) (unpublished) (finding that "[t]he plaintiff . . . cannot satisfy the fourth element of a *prima facie* case of age discrimination" based on age difference of seven years). Plaintiff's argument would require the Court to engage in pure speculation.

With respect to the alleged failure of Alltel to terminate a younger co-worker, Plaintiff has not demonstrated that the co-worker in question was "similarly situated in all material respects," Holtz v. Jefferson Smurfit Corp., 408 F. Supp. 2d 193, 207 (M.D.N.C. 2006) (Osteen, Sr., J.). Plaintiff's evidence demonstrates that a younger co-worker was insubordinate but, according to Plaintiff, was not fired. It thus does not appear that said co-worker faced discipline for the same reasons as Plaintiff. (Compare Docket Entry 28-3 at 9-20, with Docket Entry

40-1 at 1-5.)  Nor did said co-worker have the same volume of performance concerns/warnings over an extended period of time as Plaintiff.  (Id.)  Accordingly, having offered no evidence on Plaintiff's replacement or whether her position remained open, and having failed to establish that she received less favorable treatment than "similarly situated" persons outside the protected class, Plaintiff has failed to establish the fourth element of a prima facie case as well.

### iii. Pretext

Even if the Court concluded that Plaintiff could make out a prima facie case of age discrimination, Plaintiff has offered insufficient evidence for a reasonable jury to conclude that Alltel's stated legitimate reasons for firing Plaintiff represented pretext for discrimination based on age.  Alltel has presented documents establishing an extended history of performance concerns, including at least four Final Written Warnings to Plaintiff regarding slow transactions, punctuality/attendance concerns, a lack of integrity, and a failure to follow proper cash register procedures.  (See Docket Entry 29-3 at 12 ("Final Written Warning - Attendance"); Docket Entry 28-3 at 13 ("Final Written Warning - Cash Handling Procedures"); id. at 14 ("Final Written Warning for Working with Integrity guidelines violation"); id. at 18 ("Final Written Warning for performance and behavioral concerns").)  Moreover, Plaintiff's performance problems existed not only under

her most recent supervisor, as documented by both Written Warnings sent to Plaintiff and correspondence sent to Human Resources (see Docket Entry 28-1 at 8-24), but also to some extent under prior supervisors - Montgomery and Hammett (see Docket Entry 28-3 at 9-12; Docket Entry 29-3 at 10-12).

In the face of the foregoing evidence, Plaintiff relies on a year-old performance review completed by a former supervisor (Docket Entry 39-2), Santiful's facially innocuous comment, "I am getting too old for this," (and/or the additional statement alleged in Plaintiff's affidavit: "We are getting too old for this business"), and alleged stray/isolated comments by co-workers, without decisionmaking authority, regarding Plaintiff's age and/or transaction speed (Docket Entry 39-1, ¶ 5). Beyond those items, Plaintiff's evidence appears to consist of nothing more than subjective feelings that she was singled out due to her age because her younger co-workers did not face the same level of scrutiny with respect to their transaction times. In sum, Plaintiff has offered insufficient evidence to show that Alltel's stated reasons for firing her constituted pretext for age discrimination.

### b. State Law Wrongful Termination

The same standards that apply under the ADEA govern Plaintiff's related state law claim. Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003) (Beaty, J.). Accordingly, because Plaintiff's ADEA claim fails as a matter of

-31-

law, Plaintiff's state-law wrongful discharge claim fails as well. See id. ("[B]ecause Plaintiff's ADEA claim fails, his claim for wrongful discharge on the basis of unlawful age discrimination also fails."); Alderman, 201 F. Supp 2d at 546-47 ("Because the Court has determined that there is no genuine issue of material fact with respect to [the] [p]laintiff's claim under the ADEA, and [the] [p]laintiff's ADEA claim and [the] [p]laintiff's state law claim are based upon the same factual allegations and subject to the same evidentiary standards, the Court also finds that there is no genuine issue of material fact with respect to [the] [p]laintiff's state law claim for wrongful termination.").

## III. CONCLUSION

Allowing Plaintiff to amend her admissions permits the Court to address this action on its merits without unfairly prejudicing Defendants. With respect to Defendants' summary judgment motions, Plaintiff has offered no evidence that the Verizon Defendants ever employed Plaintiff (and has admitted the contrary) and Plaintiff has provided insufficient evidence to establish a prima facie case of age discrimination under the ADEA against Alltel or to show Alltel's legitimate reasons for terminating Plaintiff constituted pretext for age discrimination. Finally, Plaintiff's state-law wrongful termination claim fails for the same reasons as Plaintiff's ADEA claim.

-32-

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Withdraw or Amend Admissions (Docket Entry 36) is **GRANTED.**

**IT IS RECOMMENDED** that Defendants Alltel Communications, LLC and Cellco Partnership d/b/a Verizon Wireless's Motion for Summary Judgment (Docket Entry 28) and Defendants Verizon Wireless Services, LLC and Verizon Communications Inc.'s Motion for Summary Judgment (Docket Entry 30) be granted.


                            /s/ L. Patrick Auld
                         **L. Patrick Auld**
                 **United States Magistrate Judge**

April 11, 2013